[No. 2520]

## IN THE MATTER OF THE DETERMINATION OF THE RELATIVE RIGHTS TO THE WATERS OF BARBER CREEK AND ITS TRIBUTARIES IN DOUGLAS COUNTY, NEVADA.

## EUGENE SCOSSA, APPELLANT, *v.* CLARISSA CHURCH AND BARBER ESTATE, RESPONDENTS.

[182 Pac. 925 ; 187 Pac. 1004 ; 205 Pac. 518 ; 210 Pac. 563]

1. WATERS AND WATERCOURSES—APPELLATE COURT CONFINED TO ISSUES MADE BY PLEADINGS.

   In a special proceeding, under the water code, to determine rights to water, where an appeal is the first to reach an appellate court under the procedure, the appellate court is confined to issues raised by the pleadings.

2. WATERS AND WATERCOURSES—FINDINGS OF STATE ENGINEER IN PROCEEDING UNDER WATER CODE ARE PRESUMED CORRECT.

   The findings of the state engineer, in proceedings under the water code, to determine rights to water, though not conclusive, are entitled to a presumption of correctness and that they support the decree entered.

3. INJUNCTION—DISMISSAL OF CONTEMPT PROCEEDINGS FOUNDED ON INJUNCTION PROCEEDINGS HELD NOT TO CHANGE RIGHTS OF THE PARTIES UNDER THE DECREE IN THE INJUNCTION SUIT.

   Where a decree in an injunction suit had settled the rights of parties to certain water, a judgment of dismissal of contempt · proceedings founded on the injunction, in which the party cited for contempt pleaded a prescriptive right to use the water, did not operate to change the rights of the parties, as established by the decree in the injunction suit.

4. CONTEMPT—TEST OF CONTEMPT PROCEEDINGS IS JURISDICTION TO MAKE ORDER OR DECREE ALLEGED TO HAVE BEEN VIOLATED.

   A proceeding for contempt is a special proceeding, criminal in character, and the test of it is the jurisdiction of the court to make the order or decree alleged to have been violated.

### ON PETITION FOR REHEARING

5. WATERS AND WATERCOURSES —VALUABLE WATER RIGHT NOT ADJUDICATED AS AN INCIDENTAL MATTER.

   A valuable water right will not generally be adjudicated in a proceeding incidental to another main cause, such as a contempt proceeding.

APPEAL from First Judicial District Court, Douglas County; *Frank P. Langan*, Judge.

Proceeding by Eugene Scossa against Clarissa Church

and another, before the State Engineer, to determine relative rights to waters of Barber Creek and its tributaries, in Douglas County. On a former appeal, the cause was remanded to the District Court for certain formal findings and for a decree settling the relative rights of the parties. From such decree and an order overruling and denying contestant's motion for a new trial, contestant appeals. **Affirmed. Petition for rehearing denied. Second petition for rehearing denied.**

*Chartz & Chartz,* for Appellant:

"Unless reversed or annulled on equitable or statutory grounds, in some proceeding or suit authorized by law for that purpose, the judgment or decree of a court of competent jurisdiction, upon the merits, concludes the parties and privies to the litigation, and constitutes a bar to a new action or suit involving the same cause of action, either before the same or any other tribunal." 24 Am. & Eng. Ency. Law, 710–712, 781–782. "It is immaterial that the form of the second action is different from the first." Warren v. Cummings, 6 Cush. (Mass.) 103.

"It matters not the character of the proceedings in which the issues are adjudicated, but whether they have in fact been adjudicated between the same parties or their privies." Vickers v. Vickers, 45 Nev. 281. "This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order." Vickers v. Vickers, 45 Nev. 281; Sherman v. Dilley, 3 Nev. 21.

*Platt & Sanford,* for Respondents:

"A finding of fact in an equity suit supported by the evidence is conclusive on the supreme court." Costello v. Scott, 30 Nev. 1.

"A contempt for the disobedience of a decree and

violation of an injunction is in the nature of a criminal offense, and the proceeding for its punishment is in the nature of a criminal proceeding." Ex Parte Sweeney, 18 Nev. 74; Rev. Laws, 6305, 6368; Maxwell v. Rives, 11 Nev. 213; Ex Parte Gould, 21 L. R. A. 751; New Orleans v. New York Mail S. S. Co., 87 U. S. 387.

A judgment in a criminal prosecution may not be pleaded as res judicata in a civil proceeding, nor can such judgment be given in evidence in a civil action to establish the truth of the facts on which it was rendered. 2 Black on Judgments, sec. 529; 1 Greenleaf on Evidence, sec. 537; 2 Taylor on Evidence, sec. 1693; Mack v. Levy, 59 Fed. 458; 15 R. C. L., secs. 476, 477, 478.

By the Court, SANDERS, C. J.:

This proceeding was commenced in the year 1914, before the state engineer, to determine the relative rights of the parties herein, the only claimants, to the waters of Barber Creek, in Douglas County. It culminated in a final decree in May, 1921, which adjudged to respondents the first right to the waters of the stream and its tributaries, with a priority from the year 1852, granting to them the use of 2 cubic feet of said waters per second throughout each year, and to 3.0436 cubic feet per second or 1,102.81 acre-feet during the irrigating season, from April 1 to October 1 of each year, for the irrigation of 202.89 acres, described in the decree according to the legal subdivisions of the several tracts and parcels. The decree adjudged to Eugene Scossa the second right, with a priority from the year 1886, to the use of .5 cubic feet per second or 181.17 acre-feet during said irrigating season, for the irrigation of 33.04 acres, subject, however, to the prior rights and uses as adjudged and decreed to respondents.

It is of that portion of the decree that gives to respondents the first, and to appellant the second, right to the use of the waters of Barber Creek and its tributaries that appellant complains. He bases his objections to the award made by the decree upon two grounds: One

that his right to the use of the waters of Job's Canyon Creek, found by the trial court to be a branch or tributary of Barber Creek, is res judicata, and the other that he has a prescriptive right to the waters of Job's Canyon Creek. To make clear the legal question involved in these contentions, a brief statement of the facts, as gathered from the findings will suffice.

In 1852 the respondents' grantors and predecessors in interest appropriated the waters of Barber Creek and its tributaries, and used the same continuously for irrigation purposes, except when interrupted by appellant's grantors and predecessors in interest in the years 1894, 1895, and 1896, by the erection of a flume and the excavation of a tunned to divert the waters of Barber Creek proper to and upon their land for irrigation purposes. In the year 1886 the grantors and predecessors in interest of the appellant appropriated the waters of a branch or tributary of Barber Creek, called Job's Canyon Creek, and diverted the waters of a certain spring therein, by artificial means, to their land, located several miles below the original point of diversion. In the year 1896 respondents' grantors and predecessors in interest brought an action or suit to enjoin appellant's predecessors from maintaining their flume and extending their tunnel, which was brought to trial in 1898, and resulted in a judgment and decree establishing plaintiffs' rights to all the waters of Barber Creek and its tributaries, and enjoining the defendants from in any manner diverting the waters of Barber Creek, and particularly the waters of a certain spring, when required by plaintiffs for irrigation and domestic purposes, and particularly enjoining them from maintaining their flume and extending said tunnel so as to, in any manner, interrupt or diminish the waters of Barber Creek, or to turn the waters of that certain spring away from Barber Creek.

In 1910 the plaintiffs in the suit of 1898 filed an affidavit and obtained an order, citing the defendants therein to appear and show cause why they should not

be punished for contempt for the violation of the decree and injunction. The affidavit set forth the judgment roll in the injunction suit and charged that the defendants, in the manner specified in the affidavit, had diverted the waters of Barber Creek and its tributaries, in violation of the decree and injunction. The defendants, after particularly denying the facts stated in the affidavit, for a defense to the charge of contempt, admitted the diversion of the waters, and averred that they had used the same since April 23, 1898, openly, continuously, peaceably, and adversely to all the world, and particularly to plaintiffs and all persons and estates represented by them, and with their knowledge. A great mass of testimony was adduced, and the proceeding resulted in a judgment of not guilty and dismissal. The proceeding was disposed of by an entry on the minutes of the court, to the effect that the defendants were not guilty of contempt of court, dismissing the proceeding, and granting counsel for defendants, upon his request, ten days in which to file cost bill.

The order of the state engineer, determining the relative rights of the claimants to the waters of Barber Creek and its tributary, Job's Canyon Creek, was filed with the county clerk of Douglas County, as ex officio clerk of the district court of that county, in the year 1916, together with a certified copy of the entire proceedings, which embraced the evidence, both oral and documentary, taken by the state engineer. Exceptions to the order of determination were served and filed by appellant. The order of determination of the state engineer and said exceptions constitute the pleadings in this case.

Upon the former appeal herein, the cause was remanded back to the lower court for the purpose only of making formal findings and a decree, finally and effectually settling and determining the relative rights of the parties in and to the waters of Barber Creek and its tributaries.

The case comes before us now upon an appeal from the decree, and from an order overruling and denying appellant's motion for a new trial.

1.   This being a special proceeding, arising under the water code of this state, and the first case to reach this court under that procedure, we are confined to the issues raised by the pleadings, which, in this particular case, bring up for review all of the evidence taken before the state engineer and that embraced in the contempt proceeding referred to above, as well as the proceedings in the injunction suit of 1898.   To read and examine these voluminous records and from them determine whether or not the findings of the trial court are supported by the evidence, and that the findings support the decree, places a burden upon this court both difficult and onerous.

2.   Upon the former appeal herein (43 Nev. 407, 187 Pac. 1004) we took occasion to say that:

"While the ultimate findings of the state engineer are entitled to great respect, and in practice are not often disputed, they do not take from the court the power to grant relief to a party whose rights the state engineer may have infringed."

The exceptions provided for in the statute give to persons aggrieved ample opportunity to protect their rights in the proceedings before the state engineer, and we apprehend, as intimated in our former decisions, such exceptions were allowed for that purpose.   The findings are gathered from the proceedings before the state engineer and must be read in connection with his order, which is the complaint.   The findings are entitled to the presumption of correctness and that they support the decree.   Our own examination of the voluminous records gives no occasion to vacate the findings and to reverse the decree.

3, 4.   Counsel for appellant insist that the judgment of dismissal of the contempt proceeding is res judicata of the issues in the present proceeding, which raises the

question: Has appellant a prescriptive title to the waters of Job's Canyon Creek? A proceeding for contempt is a special proceeding, criminal in character. The test of the proceeding is the jurisdiction of the court to make the decree or order alleged to have been violated. We are of the opinion that the judgment of dismissal of the contempt proceeding left the parties in the same position they were in before the proceeding for contempt was commenced, and that it in no way abrogated or infringed upon the rights of the parties, as fixed and established by the decree in the injunction suit of 1898. That decree is binding upon the parties until a court of competent jurisdiction, in an appropriate action, has otherwise determined. Certainly a proceeding in contempt is not such an appropriate action. Counsel for appellant cite, as an authority for their position, a statement taken from our opinion in the case of Vickers v. Vickers, 45 Nev. 281, 199 Pac. 78, which reads that:

"It matters not the character of the proceeding in which issues are adjudicated, but whether they have in fact been adjudicated between the same parties or their privies."

In using the language quoted, the court could only have had in mind an adjudication in some proceeding wherein it had jurisdiction to make an adjudication. The language cannot be understood as intimating that a water right can be adjudicated in a contempt proceeding, and counsel have failed to furnish us any authority that it can be done. It is true much testimony in the contempt proceeding tends to show that, subsequent to the decree of 1898, the waters of Job's Canyon Creek were used by appellant's grantors, but this may have been done without having violated the decree. Indeed, every presumption is that the waters of that stream were used in accordance with the terms of the decree, and, until it was violated, no objection was made to its use.

All of the testimony adduced before the state engineer,

and that reviewed by the trial court, to show that the appellant and his grantors had, since the decree of 1898, acquired a prescriptive title to the waters of Job's Canyon Creek, is more or less conflicting, and we are of the opinion that there is substantial evidence to support the conclusion reached by the trial court that the use of the waters of said stream throughout all the years since 1898 was in subordination to the original decree of that date and not adverse, and that appellant's use of said waters was not inconsistent with the respondents' prior right fixed and established by the decree of 1898.

Entertaining these views, it would serve no useful purpose for us to go through the form of reviewing and commenting upon the testimony of the numerous witnesses.

The decree is affirmed.

## ON PETITION FOR REHEARING

*Per Curiam:*

5.   In the petition for a rehearing, counsel say that in our former opinion we did not decide the main question raised by appellant, namely, that of res judicata. They quote at length from our opinion in Vickers v. Vickers, 45 Nev. 274, 199 Pac. 76, and from the opinion of Mr. Justice Field in Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195, and say "it would be a sin to disturb such harmony" between the two decisions. It is neither our desire nor our intention to disturb the harmony we sought to establish between the Vickers case and the Sac County case. In fact, we reaffirm our desire to be in harmony with that case. We think the real trouble lies in the misapplication by counsel of the language quoted in the Vickers opinion, wherein it is said:

" * * * A question of fact or of law, distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties sui juris, is conclusively settled by the final judgment or decree therein so that it cannot be further litigated."

Of course, we do not know that the Supreme Court of the United States, in using the language quoted, did not have in mind and did not intend to include contempt proceedings. However, we are of the opinion that it did not. Nor do we think the language quoted is susceptible of such interpretation. In any event, we did not intend by the Vickers opinion to lay down any such rule, or to use language which might be so interpreted. In the contempt proceeding set up as res judicata the court merely dismissed the proceeding. It made no findings. While the inference flows from the order thus made that the court found that the defendant in that proceeding was not in contempt, we cannot say, in view of the lack of findings of facts by the court, just what question, either of fact or law, was determined. Certainly it cannot be said that the purpose of the contempt proceeding was the adjudication of water rights wherein such question was "distinctly put in issue and directly determined" in the sense in which that term is used in an action to quiet title to a water right. We do not believe that any court ever contemplated that a valuable property right can be adjudicated incidentally to a proceeding in which the adjudication of such right is not the main question involved. To assert any other doctrine would be contrary to the rule that a man must have his day in court.

Petition for rehearing is denied.

ON SECOND PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.